RESERVE LIFE INSURANCE COMPANY and Midland National Life Insurance Company, Appellants,

v.

PITFIELD MACKAY & COMPANY et al., Intervenors-Appellants,

v.

PROVIDENT LIFE INSURANCE COMPANY et al., Appellees.

Nos. 75–1876, 75–1877.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1976.

Decided Jan. 16, 1976.

Alan L. Austin, Watertown, S. D., for appellants.

Donald E. Scott, Chicago, Ill., for intervenors-appellants.

John A. Zuger, Bismarck, N. D., for appellees.

Before HEANEY, BRIGHT, and ROSS, Circuit Judges.

PER CURIAM.

This matter is before us for a second time upon an appeal by Reserve Life Insurance Company and Midland National Life Insurance Company, who contend that the district court has failed to follow our prior mandate which followed our opinion reported as *Reserve Life Ins. Co. v. Provident Life Ins. Co.,* 499 F.2d 715, *cert. denied,* 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 803 (1975). In addition, Pitfield Mackay & Company and others who now hold recently acquired shareholder interests in Provident Life Insurance Company appeal from an order of the district court denying them intervention in the proceedings pending on remand before the district court.

Appellees, trustees of the Provident Life Insurance Company Voting Trust, have moved to dismiss the appeal pursuant to local rule 9 on grounds that the appeal is frivolous or that we are without jurisdiction since the contested orders are not final or otherwise appealable.

We reach the merits of the issues presented on appeal and affirm the order issued by the district court, Judge Ronald N. Davies, but direct its modification in minor particulars.

I.

A brief review of proceedings and of our opinion in the earlier case will give these proceedings a proper frame of reference.

In this lawsuit, Reserve and Midland seek to overturn a voting trust established in 1955 by Provident Life Insurance Company, a North Dakota life insurance company, to thwart efforts of outside interests to obtain control of Provident. The first trust extended for 15 years to 1970. Prior to its expiration the trustees obtained consents from 42.44 percent of the owners of Provident stock to extend the trust for 10 years to November 14, 1980. Nonconsenting certificate holders regained their underlying shares. Reserve and Midland, as part of a takeover plan, obtained a substantial stock interest through purchase of voting trust certificates. Those purchased prior to the extension agreement were converted into stock when the initial trust expired. Those purchased after the extension but before the prior decision of this court were converted to stock pursuant to our mandate.

As shareholders in this litigation, Reserve and Midland have sought to invalidate the actions of the trustees and Provident by which the voting trust was extended to 1980. This effort failed in the district court but was partially successful on appeal. 499 F.2d 715. Provident and the trustees petitioned the Supreme Court for certiorari. Reserve and Midland filed a cross-petition conditioned upon success by Provident and the trustees. All petitions were denied. 419 U.S. at 1107, 95 S.Ct. 778. Our mandate was filed on January 7, 1975.

In our prior decision we held that

the extension of the voting trust in this case amounted to solicitations of proxies and such conduct came within the strictures of the proxy rules as promulgated by the SEC. *See* Rule 14a–1 et seq., 17 C.F.R., § 240.14a–1 et seq. [*Id.* at 725.]

In our opinion we observed that

[h]ere, however, Provident's management and the trustees refused to furnish to Reserve and Midland the names of stockholders, except on order of the North Dakota court, and, successfully resisted the efforts of appellants to obtain a list of the names and addresses of the certificate holders of the voting trust. As a result of this, Reserve and Midland were effectively precluded from an equal opportunity to communicate with the participants of the trust, contrary to the purpose intended by the Commission's proxy rules and § 14(a). [*Id.* at 726.]

We applied equitable principles to fashion a remedy for the foregoing violation. We permitted Reserve and Midland to obtain voting shares for the voting trust certificates which they had obtained by assignment prior to our judgment but, recognizing that members of the voting trust might very well wish to continue efforts to provide a common front against takeover attempts, we said:

> The trial court may take cognizance of this continued effort by shareholders of Provident to present a common front against plaintiffs' efforts to take over their company. Thus, in the exercise of its equitable discretion, the trial court may give Provident and the trustees an opportunity to reaffirm the voting trust *with the present certificate holders*, other than Reserve and Midland, subject, however, to the requirements of Rule 14a–1 et seq. [*Id.* at 727 (emphasis added).]

In our remand we provided:

> Accordingly, we remand this case for the entry of a judgment in conformity with this opinion. Should Provident and the trustees seek permission to attempt to obtain reaffirmation of the voting trust with its certificate holders, the district court shall pass on such application and if approved shall enter such orders as may be appropriate to assure that full, fair, and complete disclosure of information is afforded all voting certificate holders by the appellees as well as by appellants. The trial court should issue such other orders as will protect the rights of all parties and retain the status quo of the voting trust, except with respect to the extended voting trust certificates heretofore acquired by Reserve and Midland, pending any resolicitation. As to voting trust certificates obtained by Reserve and Midland prior to the filing of this opinion, Provident will be required to exchange them for the underlying common stock represented by these certificates. [*Id.* at 727.]

We issued our opinion June 21, 1974. Because of intervening proceedings (petitions for rehearing by both parties and an application by appellees for certiorari) there has been substantial delay in the implementation of our mandate. The status quo of June 21, 1974 has been altered by market transactions in which shareholders have sold their stock represented by trust certificates to third parties such as Pitfield Mackay, who seek to intervene in this action.

The district court acted on our remand and motions for intervention on October 7, 1975, and entered an order which permitted the trustees of the voting trust and Reserve Life and Midland to communicate with holders, as of June 21, 1974, of voting trust certificates. The communications were to be subject to the court's approval as well as that of the Securities and Exchange Commission in accordance with § 14(a) of the Securities and Exchange Act of 1934. The court's order further provided "that such holders [of voting trust certificates are given] 45 days in which to avoid the terms of the Extended Voting Trust by surrendering their certificates to the transfer agent to be exchanged forthwith for the underlying shares of common stock of Provident Life Insurance Company."

The order of October 7, 1975 also denied the intervention petitions. The proposed intervenors as holders of voting trust certificates acquired subsequent to June 21, 1974, claim a right to elect not to continue their shares within the voting trust.

The appellants and proposed intervenors contend that limiting the solicitation to those persons holding certificates as of June 21, 1974, and providing for certificate holders to indicate disaffirmance by mailing in their trust certificates violates the mandate which speaks of affirmance rather than disaffirmance and that the procedure insures that transferees of certificates acquired subsequent to June 21, 1974, will have their shares locked into the trust.

With this background, we turn to the merits, considering contentions only in the light of whether the district court's order correctly construes and complies with our mandate.

## II. *Proposed Intervention.*

■ The district court properly denied intervention on the merits. Reserve Life and Midland brought their action in vindication of their own rights, not as a class action for other certificate holders. The intervenors raise substantial new issues and would further delay the prompt disposition of this case.

In affording relief we recognized the rights of Reserve Life and Midland to disaffirm the voting trust with respect to trust certificates purchased by them prior to the date of our decision and to solicit voting trust certificate holders as of the date of our opinion to join them in opposing extension of the trust. Whether subsequent purchasers of voting trust certificates are entitled to void their newly acquired voting trust certificates was neither presented nor considered in our opinion.

Our directions to the trial court to "protect the rights of all parties and retain the status quo of the voting trust," *id.* at 727, cannot be construed to impose upon the district court the obligation to resolve at this late stage of this litigation rights of a successor to a member of the voting trust, who did not participate in this lawsuit and who is not bound by the decision therein.

## III. *Whether the Trial Court Followed Our Mandate.*

■ Essentially, the trial court correctly followed our mandate in its order relating to solicitation procedures to be followed by the parties. Our opinion did speak in terms of affirmance of the voting trust rather than disaffirmance. The district court, however, recognized that certificate holders as of June 21, 1974, must have retained a share interest in order to exchange a voting trust certificate for a share certificate. Whether transferees of trust certificates after June 21, 1974 may avoid the voting trust certificates is a question which will not be resolved in this litigation. We may note that this lawsuit in no way sought to restrict the voting certificate holders from selling shares of stock represented by their certificates nor to preserve or protect the rights of shareholders, not parties to the proceedings, by a class action suit. In this case we are not deciding what rights of affirmance, disaffirmance or otherwise attach to trust certificates purchased after June 21, 1974.

■ Thus, we deny appellants and intervenors any relief and essentially affirm the order of the district court dated October 7, 1975. We think it appropriate for the district court to provide a time limit for the exchange of voting trust certificates for voting shares. We do believe that the order should permit a voting trust certificate holder who for valid reasons cannot produce his certificates for exchange within the 45-day time period specified in the district court order of October 7, 1975, to disaffirm the extension of the voting trust within that period and to thereafter produce his voting certificates for exchange for shares as soon as practicable or available within overall time limits prescribed by the district court. The order must thus be slightly modified with respect to time limitations.

Accordingly, under our power to review and recall our mandate,[1] we have, for purpose of clarification, reviewed the order of the district court of October 7, 1975. That order complies with our mandate in all material essentials except in the particulars mentioned herein.

We have considered the appeal in the intervention (No. 75–1877) on its merits. Considering the application for intervention either as one of right or as permissive under Fed.R.Civ.P. 24, we affirm the district court's order denying intervention.

1. *Reserve Mining Co. v. Lord,* 529 F.2d 181, at 188 (8th Cir., 1976).

We think it essential that the resolicitation proceed without further delay. We instruct the district court to expedite all procedures relating to this solicitation. The district court should also request that the Securities and Exchange Commission act with promptness in reviewing the solicitation material.

Issue our further mandate forthwith.